Case number 22-3014, United States of America versus Maurice Kerrick, Jr. Appellant. Mr. Kramer, FPD, for the appellant. Mr. Goodhand, AUSA, for the appellee. Good morning, your honors. It may have pleased the court. A.J. Kramer on behalf of Mr. Kerrick. This case is an unusual case in many ways, I think. Mr. Kerrick received the maximum possible punishment for the offense itself, for the underlying offense, which is what he was advised of at the time. What he was never advised of, as the district court found later during the revocation proceedings, was that he could be sentenced to an additional term of imprisonment or violation of supervised release. So that's the premise of the argument, that it violates due process. As the district court found, stated several times, the argument was that it violates due process for it to be sentenced to an additional term of imprisonment about which you hadn't noticed. How much time has he served? Like, in other words, on that conviction that he did not dispute? The superior court conviction, he served, I think, about three years, somewhere around three years. That was a seven-year sentence and the two years is added on, so that's a total of nine years he has to serve. If the two years that he was sentenced to on the revocation was deducted, he'd only have seven years to serve on the superior court. But he's still incarcerated on that offense? He is still incarcerated on that offense and has several years left. A consecutive two years. Yes, and he also is subject to revocation proceedings for a Maryland conviction that have not, those revocation proceedings have not yet occurred. But it's not like this would, he has a substantial period of time left on the superior court sentence and then additional revocation proceedings on a state conviction in Maryland. And we're talking about a defendant who is at least a Category 5. I know that there was discussion in the transcript about whether he was Category 5 or 6. Yes. So there's an assumption that over, you know, his very story, criminal history, at times when he gets incarcerated, then followed by supervised release, potentially revoked other times, whether it's state or federal, that you're supposed to be a model citizen during that period of time. So if you commit other crimes, why wouldn't there be that expectation that defendants would know, well, you could go back in jail because you committed other crimes? Well, first of all, the district court specifically found that he was never so advised and had no knowledge of it. So that's, let me put it that way. The only other, at the time of these revocation proceedings, the only other revocation proceedings that he had been subject to were much different. Those were in the state of Maryland, and those were revocations for probation where he had part of a sentence left. So that was not an additional sentence. He hadn't served the underlying sentence and then had an additional period of release. In the Maryland proceedings, he had had a sentence. It was 20 years, but eight years or nine years were suspended, and so he still had an 11-year sentence hanging over his head. It hasn't been yet. That's on the current one, but he had had a previous revocation in Maryland, and that just revokes and sentences you to the original sentence. So that would be akin to if he had this five-year sentence, if he had had three years, served three, was on parole for two, and had a revocation. He never got, in other words, the only revocation proceedings he went through, he never had anything more than the maximum sentence for the underlying offense imposed. There was nothing that would have indicated to him that you could be sentenced to an additional term of imprisonment above and beyond the maximum for the crime. So that's the true challenge, above and beyond the maximum. He's not disputing that he could have served additional time. Well, that's not before, that wasn't before the district court and not before this court, but if he had served, say, it's not possible in the federal system anymore because there's no parole. So that's the maximum sentence for the underlying offense. It's not like he got, I suppose if he had gotten three years and then his supervised release was violated, it would be a different argument. I'm not saying I would concede that, but having served the maximum possible, what he was told both in the pre-sentence report and most importantly at the plea by then Judge Urbina, that this is the maximum possible sentence, five years in prison. Having served that, I'm sorry. If that were the, as your algorithm is, then once somebody's served the five years, the conditional release, conditional release is irrelevant, right? You can do whatever you want and not be sentenced. Well, it can be taken care of in a 10 second colloquy at the plea by telling the person what I think rule 11 still requires, which is that if you violate supervised release, you can be sentenced to an additional term of imprisonment. We would have a much different argument if that had been done. So all you have to, all the district court has to do, I'm sorry. What argument would you have if that had been done? Well, that's what I'm saying. That would be, well, then there's the double jeopardy argument and sixth amendment arguments, but you're challenging the adequacy of that colloquy and of that guilty plea to support the additional so-called adjustment to the sentence. Well, I think it was inadequate, yes, but I'm not challenging the adequacy of the plea. But you're challenging the plea, just not in the sense of not trying to vacate it. No. You're challenging its validity for this purpose. It's adequacy to support the government's... It's adequacy for due process purposes. No, any challenge is not, can't just be, can't just avoid the rule 11E, direct appeal. But we're not saying that the plea itself with this, this argument is not that the plea itself is invalid. The argument is that it violates due process to sentencing to a term of imprisonment. And the district court phrased it that way several times. I understand your point. I mean, you're saying it's not invalid to the point that it should be a vacate, saying it's insufficient to support... Correct. And then that remedy would be meaningless at this point because he served the maximum possible term of imprisonment for the underlying offense. So it's, I know the government tries to pigeonhole it in an argument they never made to the district court, by the way, about that that's really what's going on, the validity of the plea, but that's not what's going on. It's a due process challenge to imprisoning somebody for an term of imprisonment above the maximum sentence for the crime when the person had no notice and was never told that they could be sentenced to that term of imprisonment. Do with section 3583E, which lists the different factors for a supervised release revocation hearing, right? None of the factors seem to suggest that a problem with the initial sentencing or the initial plea colloquy would be a basis for this. Well, those are the factors the district court is supposed to consider in whether to revoke the term of supervised release and what to do after saying whether to revoke it or not and what to do after making that decision, but that's not part of the argument here. The argument here is that whatever decision, those factors in a sense are irrelevant because the district court violated due process to sentence him to any term of imprisonment because he was never given any notice or told. Haven't a number of other states said that flaws in the original sentence can't be a defense to a revocation proceeding? I believe there are eight circuits. There was no flaw in the original sentence. He got the five-year maximum sentence. We're not arguing that that was improper. You're arguing, as I think Judge Ginsburg also mentioned, that there was some sort of problem with the plea colloquy. He wasn't informed. He wasn't told about this, exactly, and the government has cited no case that says that there's any waiver of that issue. It's not something they argued in the district court in any of them, but they've cited no case that I know from another circuit. They haven't cited them, but there are a number of cases. I'm a little surprised why they haven't cited them, but in any event, if you're saying that you can't raise it when you've never been informed of a term of imprisonment, that you can't raise a due process claim later when that term of imprisonment is imposed upon you, I just don't think that's right, especially in the context of revocation when the Supreme Court has repeatedly said that post-revocation sanctions are part of the penalty for the initial offense. They have said that several times, that this is just a part of the sentence for the original offense, so I don't know why you couldn't challenge, and again, I don't know the cases because they weren't raised, but I don't know why you couldn't challenge a sentence that's imposed that's part of the original offense at the time it's imposed, which is what we did. At the time Judge Kelly imposed the revocation sentence, we challenged that on these grounds, and that's what this appeal is about, so I'm not clear how you could not challenge what the Supreme Court has said that an accused final sentence includes any supervised release sentence he may receive, so if we're claiming that that sentence was not proper for due process reasons, I don't understand how a court could say that that kind of challenge is precluded. Let me put it that way. Go ahead. Seven or eight circuits have said that this kind of a challenge is collateral, and you've asked us to disagree with that, but what is your answer to the claim of only seven or eight circuits that the consequence is collateral because it's not the automatic and direct effect of the... First of all, all those cases that the government cites were decided before Heyman. Heyman, you keep citing, you keep quoting and citing Heyman, but only to the plurality opinion. Well, let me put it this way. In Mons, the court said, in the Mons case, the court said, there are a form of punishment, revocation of supervised release in a sentencing. There are a form of punishment that Congress prescribes along with term of imprisonment as part of the same sentence, and they said in Heyman, supervised release punishments arise from and are treated as part of the penalty for the initial offense, and for that, they quoted Johnson versus United States from 2000. So the Supreme Court has consistently said, which takes this... I don't understand how something could be collateral that's part of the original sentence. That just makes no sense, and I don't think any of those courts have held that part of the original sentence could somehow be collateral. That's just... I just don't understand it, and so I don't have an answer other than that the Supreme Court has said it's part of the original sentence, and I don't understand how something that's part of the original sentence could be collateral. And they've said that specifically about a revocation sentence of supervised release. Well, the court hasn't blessed, hasn't graced us with a definition or a dividing line. We've got the one, whatever it is, direct, active, automatic phrasing seems to be the day in the circuits, and I guess if that's not the standard, or is this the only thing, this is the only consequence that you're saying would not be collateral? Well, even in his concurrence in Padilla, Justice Alito said there's a distinction between conviction and sentencing, which are direct consequences, and there's collateral consequences, and he didn't list anything about revocation of supervised release of parole, which is probably because the Supreme Court has said that's part of the original sentence. So, I think that Padilla makes it clear, Padilla, and I'm sure I'm pronouncing it wrong, Chydez, which followed Padilla, have made it clear that part of the original sentence could not be a collateral. In that case, they held the removal, and they said the line is not, they specifically said in a footnote in Padilla that we recognize the line is not clear, but one thing even, as I said, even in his concurrence, Justice Alito said that the conviction and sentencing is clearly a direct consequence of the, is not a collateral and clearly direct, and since the Supreme Court has said that revocation sentences are part of the original sentence, that seems to me to take care of that argument. And besides, I'm not sure, definite, immediate, and largely automatic. First of all, I think revocation of supervised release satisfied that, but there's a whole other line of cases that talk, that emphasize the fact that it's not the court itself that is doing it, but like a parole agency or like the reason for the whole removal debate was because it was done by a separate agency, but the Supreme Court has revocation of it is all done by the district court as part of the original sentencing. So again, whatever test is used, I think that a supervised release term and revocation are clearly part of the original sentencing and don't, couldn't satisfy any, whatever definition of collateral. How has harmless error, if at all, affected in this case? Well, it's clearly. And I say that because he, at the end of the day, he pled and there doesn't seem to be anything to suggest that he would have withdrawn his guilty plea. But, but that's, that's not the remnant. I think it's on several levels. The problem is that he served the maximum sentence. So the remedy of withdrawal of the guilty plea is meaningless. The second part of that is that the argument is that he was told only that the maximum quite clearly that the maximum possible penalty was five years. So that the imposition of two extra years on him is in itself the prejudice and the harm. Because he has not yet served that two years. It's consecutive to whatever he's in for now. Yes. Okay. So the Bureau of Prisons, when they, DC sentences are treated like federal sentences. So when, when he got seven years in superior court, and then he got two years consecutive here, Bureau of Prisons counts that as a nine year sentence. But if the two years was vacated, he would be back to a seven year sentence. So they don't actually calculate it, that he served seven years in two years when he actually served those two years. He's serving a nine year sentence because the two years were added on. So the harm is that extra two years that Bureau of Prisons has added on. They don't actually separate them out and decide which one was served first, the seven year or the two years. They aggregate it as a nine year sentence. But why then under that scenario, even if he then now becomes informed, I mean, does it go back to the sentencing judge at all? Or does he just automatically just not get two years because he wasn't told? Well, I think the closest case to that is the ex-rel Russo versus Illinois, where the person was not informed at all of a special parole term, which is very akin to the supervised release term. And in that case, the court, the person was not informed at all of it. So they just vacated it on appeal and said that because they were not informed, it's a due process violation. And they just vacated the term itself. I think that at this point in this case, that's the only remedy is to vacate the two years where he was never advised. And that's the violation to impose upon him a sentence about which he was never advised. Now, also, for example, the rehab decision. As former trial court or trial courts, we all had to receive a lot of those pleas back because it had to be clear that the defendant had been informed, for example, if he had pled in state court that he was a felon and then could no longer have a possession of a gun. Yes. So how is this akin to or different from that situation, again, allowing the trial court to deal with it? Well, I think a couple of things. First of all, that affects the validity of the conviction itself. So those people, there's a whole host of procedural thickets along the way because it would have had it had to be done by 2255 proceedings. And there were all kinds of procedural hurdles and arguments be made. But the bottom line is that would vacate the conviction entirely. So that would be the prejudice in that case. Now, that had to go back to the district court. There also was the kicker that it didn't have to be on the record. The government might be able to show in some other manner that the defendant had knowledge that they were had been sentenced to a crime of more than one year. So that was in a whole different scenario. But this case is the district judge in this case already found that he was never advised that he could be sentenced to this additional prison term. So that's off the table. That's not like in Rahave where you go back and try to see if there was any evidence. The government could try to show any evidence that someone had knowledge that they had been convicted of a crime. Who said it was Rahave yesterday? 2254? Yeah, 2254, yes. It came from state court, yes. Which is more difficult both procedurally and legally to get relief on. And yet they've vacated the term of supervised release. It's less difficult in the sense that it's direct. I mean, not direct appeal, but I mean that it's in the channel prescribed by Rule 11. It went through the state courts and then into federal court, which has much stricter on 2254, much stricter limitations. So I think this is in the channel of until he got brought into court for revocation and told that he could get an extra two years, he had no idea that this could happen is what the record shows. And therefore there was no reason for him to challenge anything earlier. He had no reason to think he got the five year maximum sentence. And so there was no, so that's why I think, and this is on direct appeal, obviously from this sentence. So in a sense, I think it's less onerous burden than in Russo. Thank you. Thank you. May it please the court, David Goodhand from the United States. With me at council's table is Petty Ginella, who's the deputy chief in the appellate division and Kevin Burney, who is a trial attorney in this matter. The district court in this case properly concluded that the possible revocation and the subsequent potential re-imprisonment of the defendant was not definite, immediate, and largely automatic consequence of the defendant's plea. And that makes perfect sense. When you look at the collateral versus direct consequence test, most saliently, the courts are pretty universal in agreement with the notion that if the consequences of function of the defendant's own inability to avoid misconduct, if the consequences in the hands of the defendant as it was here, then that cannot be a direct consequence. And that makes perfect sense. Here, there was no ability for the district court at the time of the plea to understand whether or if, or maybe the defendant did anything at the end of the term of incarceration. So there was no... If you look at the 3553A factors, which we could use it sentencing, which we could also use during the period of supervised release, you have the opportunity to modify, continue, modify in the sense of adding conditions, continue or revoke. And so that's already known. And so why wouldn't we require a district court to just state supervised release is part of the sentence. You're having this term, but you could, based on whatever the guideline calculation is, to be followed by some period of supervised release. If you revoke, if you violate rather, then it could be modified. We could add terms. It could be continued. It could be revoked. And then you could have an additional period of incarceration. I'm not suggesting that you have to say what that period is, because there's another sentencing guideline calculation for the supervised release, but that is essentially a consequence of that violation. There's no doubt that if you do engage in your misconduct and you violate the conditions that kick into effect at the end of the term of incarceration, there's modification, there's a possibility of re-imprisonment, but that will never come to pass unless you engage in a violation. And I think, frankly, I think Rule 11 already answers this question. I think Rule 11's terms are pretty clear. If you look at 11B1H, what the committee now admonishes district courts to tell defendants at the time of plea is any maximum possible penalty, including imprisonment, fine, and term of supervised release. Well, if you look at the plea transcript here, you will see that each of the boxes was checked. He was told that the maximum period of possible imprisonment at the time of the offense was the five years under the marijuana possession with intent to distribute offense. He was also told the possibility of a fine, and he's also told, most critically, that there was a term of supervised release that was possible when I sentenced you. What the defendant was not told were all of the possibilities, the permutations that might have occurred if he, at the end of the incarceral term, violated the term of supervised relief. And, you know, I think it makes perfect sense why the district court doesn't have to go down this road. And I would commend to the court, the only case I found that really discusses this in any detail is the district court opinion, Gogan. And Gogan talks about the practical difficulties of sort of, you know, gaming out what might happen at the end of your carceral term. And here I'm quoting from Gogan, where the court says, the court is able to discuss the original term of imprisonment, fine, and terms of supervised release at the Rule 11 hearing, because the court is aware of the conduct surrounding the original offense. And that Rule 11 hearing to know whether or in what manner or how many times a defendant will violate supervised release in most cases. So we're talking about the fact of the violation. Any violation could lead to these various scenarios. Sure. And I think the defendant was put on notice that he was given that when you're when you walk into court and you're ready to do your plea, the court has to tell you about the maximum term of imprisonment and the fact of supervised release. I mean, supervised release by its very terms, supervised. It suggests to you that you don't just get off scot-free if you violate the supervised release. These are conditions. There was a long, detailed list at the end of the sentencing hearing. These are the mandatory conditions. These are discretionary conditions. If you violate them, there have to be consequences. Well, let me ask you a different way too. When you're in state court, it's way different than by the guidelines. Some states may have some guidelines, but for the most part, for example, in South Carolina, if you have armed robbery, it's 10 up to 30 years. If you have grand larceny, it's zero to five years. So you can see how there's so much discretion by the state court judge. But let's say the state court judge sentenced you on grand larceny and says, I'm going to sentence you to five years suspended upon the service of three, followed by a supervised release. That means that if that defendant violates during that period of supervised release, they could still get up to the five years because that's the maximum sentence. So this particular defendant who's being sentenced in two state versus federal, why couldn't that be conceived as being confusing because you've got the maximum sentence and then you think that that's all I can get. I'm not saying that that's a fair reading of it, but I can see the confusion because at least on the state side, you can go up to if you didn't get it originally. And then here he's got it right from the beginning. And so then could therefore think, oh, they were in tandem. I think the answer to that question is that when you're talking about, again, what rule 11 says is you have to apprise the defendant of the maximum possible penalty. Well, at the time of the rule 11, the maximum possible penalty can only relate to the offense of conviction. It can't relate to the possibility of violation of conditions of supervised release because you don't know what those conditions, you don't know if the defendant will actually violate them. You don't know that the circumstances of the violation, you don't know a lot of things. And so in that respect, this was a rule 11 colloquy that matched and coalesced with, I suggest, the rule, the letter of the rule of rule 11. And so, you know, while there might be many permutations that could lead to confusion on a defendant's part, that's not the test for due process. The test for due process is, is it a definite, immediate, and largely automatic consequence. Certainly I would suggest it was foreseeable to the defendant that there would be consequences relating to a violation of supervised release. When you're given these conditions, you can't expect that at the end of your carceral term, even if it was a maximum, that you would have no consequences. You would get off scot-free as the defendant is suggesting is appropriate here. And there are several cases in other circuits, albeit that do discuss direct consequences. And for example, some of the examples would be a consecutive sentence, mandatory special parole term, ineligibility for parole, maximum prison term, and fine for offense charge, a mandatory parole term. So what would you say are distinctions on those being direct consequences versus collateral consequences? The direct consequence here of the defendant's plea was the supervised release time. That was the direct consequence of his plea. So when, for example, in the Russo case that my opponent relies on quite heavily, coupled with the Watson case from this court, there, there was a complete absence of information provided to the defendant at the Rule 11 colloquy about the supervised release term or the special parole term. Russo, those were mandatory. Watson, that was mandatory. Certainly that is part of the sentence that you have to tell the defendant about. But the consequences, I mean, supervised release conditions, most critically and saliently here, they don't become operational until you finish your carceral term. You impose conditions of supervised release at the time of the original sentence, but they do not kick in. They do not become operational until you finish your carceral term. So the notion that you would have to go through chapter and verse about the permutations of a hypothetical violation and a possible imprisonment. Why would that be? Mr. Kramer suggested all it would take is to say a violation of these requirements may result in you being imprisoned for an additional term. Certainly, that would be a laudatory thing for a district court to do. I don't suggest for one moment that that's not something that would be beneficial. I'm suggesting that in the context of a constitutional due process claim, which is what the defendant has raised here, that additional admonition is not constitutionally required. And again, I circle back around to the terms of Rule 11. I see them as quite plain. It's imprisonment. It's the possibility of a fine and the term of supervised release. To the extent you've addressed the distinction between direct and collateral consequences, I think Mr. Kramer's point, I think in common law terms, would be confess and avoid. Because his point is not that this meets some criteria for being collateral, but rather that it's part of the original sentence. It cannot be collateral. Right. And I know he relies heavily on the Johnson decision and the Johnson phrase treating post-revocation. We attribute post-revocation penalties to the original conviction. I would suggest there's nothing irreconcilable about treating post-revocation penalties as attributable to the original conviction on the one hand, and on the other hand, not requiring a disaccord judge to explain the permutations of a hostile revocation, on the other hand. And I say that because of the special operation of supervised release. When Johnson made that declaration, it cited to a case United States versus Wyatt, and approvingly cited to United States versus Wyatt, which is a Seventh Circuit. And I think this is the proper framework by which we analyze this claim. Wyatt said, the proper understanding of a revocation of supervised relief is simply that by engaging in prohibited conduct during the term of supervised release, a defendant triggers a condition that permits modification of the terms of a supervised release. And that's at 102 F3245. So here we have supervised relief term, the conditions, they were imposed at the time of sentencing. That is undoubtedly part of the sentence. That's why rule 11 says you must tell him about the term, about the rule, about the supervised release term. But you don't trigger the condition that permits modification until the conditions kick in, until the supervised release terms kick in at the end of the carceral term. And that is the difference between a direct and a collateral consequence. So I don't think there's anything inconsistent about saying a post-revocation penalty is attributable to the original conviction. It is attributable to the original conviction. You have, as part of your original term of conviction, original conviction, you have a sentence that has constituent parts, a carceral term, perhaps, and a supervised release term. The defendant was given notice of both those. What the court did not have to do is go to the next step under the due process clause and say, oh, and by the way, if you violate this condition of supervised release, there may be additional prison time. If there are no additional questions, I would ask that you affirm the judgment and conviction below. Thank you very much. Thank you. Mr. Kramer, we'll give you two minutes on rebuttal. Thank you, Your Honor. The government used various words, but they don't, referring to Johnson, about what Johnson said. But in Hayman, they were quite clear. Supervised release punishments arise from and are treated as part of the penalty for the initial offense. And in Mott v. United States, they said they are a form of punishment that Congress prescribes, along with a term of imprisonment, as part of the same sentence. So I never heard the government explain how part of the same sentence could be a collateral consequence. Also, I completely disagree about Rule 11 for reasons that are discussed at length in the brief. I think only the government could say an amendment, the 2002 amendments, which were intended to broaden the advice about the effects of it, could somehow restricted the defendants, restricted the advice that should be given. It's discussed at length in the brief. I can discuss it, but in any event, as I read all the amendments to Rule 11, it's still required under Rule 11. They never said that this removal of the words refractive. It says the changes are intended to be stylistic only, except as noted below. The only note below about supervised release was it was intended to broaden the advice that was given to a defendant. Finally, there is one case. It's surprising there are very few cases that seem to be close to this. The Cook case was relied upon heavily by the government and the district court. They don't seem to have backed away from it, but in that case, it was quite simple. The person was advised of exactly what we were talking about, which is that if you violate supervised release, you can be sent to an additional term of imprisonment. The court in all they had to do. The Gargan case that the government stood up and relied, by the way, in the district court, they never argued this collateral consequences argument. This is one the district court did on its own. I recognize, obviously, that the basis for that is before this court, but the government never argued the distinction between collateral and direct consequences in the district court. The fatal flaw with the Gargan case is that it said that supervised release, revocation, and sentences are not part of the original offense. Why they said that 16 years after Johnson was decided and three years before Mont and Heyman were decided. The whole underlying basis for the Gargan decision and the difficulties were because it said the basis for that was that the district court said wrongly, as the Supreme Court has said, that it was not part of the original sentence. It shouldn't be entitled to any weight. Thank you very much. I would ask you to vacate the term of the supervised release. Thank you. The case is submitted.
judges: Rao, Childs, Ginsburg